[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the refusal of the Board of Tax Review to reduce the assessment of real property consisting of land and buildings owned by the plaintiff located at 80 Heritage Road in the defendant Town. The appeal concerns the assessment of that property as of October 1, 1988 and as of October 1, 1989. The full value placed by the defendants' assessor on the property and the value as assessed is as follows:
Oct. 1, 1988
Full (100%) value/Assessed (70%) value Land: $2,235,000/$1,564,500 Buildings: $18,225,000/$12,757,570 $20,460,100/$14,322,070
Oct. 1, 1989
Land: $2,235,000/$1,564,500 Buildings: $18,225,000/$12,757,570 $20,460,100/$14,322,070
The plaintiff's property consisted of a large life care facility and health care center on 22.35 acres of land. It was built during 1987 and 1988. A Certificate of Occupancy for the facility was issued by the defendant Town on August 25, 1988.
Of the three methods of determining land and building values recognized by the courts of Connecticut, the cost approach is the only feasible one that can be used for this unique facility. All the costs of constructing the facility were put in evidence as Plaintiff's Exhibit N. There can be no better evidence of the fair market value of the property than the actual costs of its construction within two months CT Page 4656 of the first assessment date of October 1, 1988, plus certain other related costs.
During the hearing on the matter the plaintiff withdrew the appeal in so far as the $2,235,000 value of the land is concerned.
According to the assessor's card — Defendants' Exhibit 5 — the value of $2,235,000 was computed by multiplying the 22.35 acres of land owned by the plaintiff by a rate of $100,000 per acre. However, the card then states: "Includes Raw Land + All Site + Yard Improvements including, Roads and Paving, Lighting, Grading, Landscaping." The property consisted of two parcels, one of which was purchased for $200,000 and the other of which was purchased for $564,750 or a total of $764,750. Defendants' Exhibit 5.
The contractor which built the facility for the plaintiff was the Weitz Company of Des Moines, Iowa. Its final Application and Certificate For Payment, is plaintiff's Exhibit N. It is dated February 17, 1989. It sets forth each item of the work in constructing the facility, line by line. This exhibit on page 1 sets out the cost of the "Site Development" as $1,088,992 and the cost of the "Landscape/Site Furnish" as $104,500. As these two items are included in the $2,235,000 value of the land for assessment purposes, they must be deducted from the cost of constructing the life care and health care facility.
Plaintiff's Exhibit N shows that the Weitz Company was paid $13,747,792 by the plaintiff for the construction work. This is based on the original contract price of $12,571,600 plus 21 change orders totalling $1,176,192. This work must have been completed before the Certificate of Occupancy was issued by the defendant Town. However, plaintiff's Exhibit N states that the Weitz Company did additional work at a cost of $56,200 in the period from January 21, 1989 to February 17, 1989. Plaintiff's Exhibit N p. 6. Line 99.21. The Court also notes that 35 carports at a cost of $125,000 were built during 1989 before October 1, of that year. Plaintiff's Exhibit S p. 19.
Thus the full value of the buildings for assessment purposes as of October 1, 1988 has to be $13,747,792 minus $1,088,992 cost of "Site Development, Exhibit N. p. 1, line 2.01, and also minus $104,500 cost of "Landscaping/Site Furnish" Exhibit N, p. 1., line 2.05 both of which are included in the Land value of $2,235,000. $13,747,792 ($1,088,992 + $104,500) = $12,554,350. To this latter figure of $12,554,350 must be added costs to the plaintiff which CT Page 4657 were not paid to The Weitz Company. Such costs are detailed in the copy of the relevant parts of the Marshall Value Service, on page 79 of Plaintiff's Exhibit S. They are architect's fees, interest or building funds during the period of construction and sales taxes on materials. The plaintiff's appraiser, Henry Harrison, in the report of his appraisal, Plaintiff's Exhibit S, on page 40 states:
 "As support for certain construction costs, I utilized the Marshall Value Service. . . .Information about the property was input into a terminal tied into Marshal Swift's central computer. The following print out demonstrates support for the actual costs."
His figures as to the items specified (architectural fees, interest and sales taxes) are as follows:
 Architects Fees $652,671 Interest $962,375 Sales Tax $311,465 -------- $1,926,511
$12,554,350 + $1,926,511 = $14,480,861
The full value of the buildings and their value for assessment purposes are as follows:
Oct. 1, 1988
 Full (100%) value/Assessment (70%) value Buildings: $14,480,861/$10,136,602
The full value of the buildings as of October 1, 1989 is greater than that of October 1, 1988 by the addition of $56200. Plaintiff's Exhibit N. p. 6. line 99.21 plus the cost of the carports of $125,000. Plaintiff's Exhibit S p. 19. $14,480,811 + $56,000 + $125,000 = $14,661,811.
The full value of the structures and their value for assessment purposes is as follows:
Oct. 1, 1989
 Full (100%) value/Assessment (70%) value Buildings: $14,661,811/$10,263,267
The court rules concerning defendant's claims that certain other items should be added to the construction costs are as follows: CT Page 4658
The construction management fee paid to The Weitz Company of $711,600 is already included in the construction costs. Plaintiff's Exhibit N p. 1, line 1.07.
The project development fees paid to the Life Care Services Corporation cannot be included in the cost of construction of the facility. They represent costs for services provided to the plaintiff by Life Care Services Corporation associated with planning, developing, financing and marketing of the facility. These costs were not paid by the plaintiff out of loans but are being amortized over a five year period. Plaintiff's Exhibit B, p. 3. Paragraph 2.
The Bond Issue Fee occurred in connection with the issuance of Connecticut Development Authority Bonds. These costs were not paid by the plaintiff out of loans but are costs being amortized over the terms of the loan (30 years) using the bonds outstanding method. Plaintiff's Exhibit B, p. 3, paragraph 3.
The value of the necessary permits cannot be included in the cost of construction. At most they added to the value of the land. See the testimony of both experts. Defendants' Brief p. 22.
The fair market value of the plaintiff's buildings as of October 1, 1988 is found to be $14,480,861 and the 70% assessment is found to be $10,136,602.
The fair market value of the plaintiff's buildings as of October 1, 1989 is found to be $14,661,811 and the 70% assessment is found to be $10,263,267.
The plaintiff shall be reimbursed for the overpayment of any taxes, with interest and costs which costs shall include a reasonable fee of the plaintiff's appraiser of $1600 for 2 days appearance in court.
THOMAS J. O'SULLIVAN TRIAL REFEREE